Smith-Silk and Prenzler. Pardon. Cancel. May it please the court. I'm Thomas Mack. I represent the plaintiff, Smith-Silk, in this case. This is a case that challenges the Neutral Site Custody Exchange Act. Basically, under the Neutral Site Custody Exchange Act, counties are authorized to enact ordinances, to put a special fee on filing fees. Currently, both entry of appearance and answer fees for both plaintiffs and defendants appear to have to pay this fee. And the purpose of this fee is to fund a social welfare program specifically to provide a place to exchange custody of minor children. This case, a very similar case was decided by our Supreme Court back in the 80s, that of Crocker v. Finley. In Crocker v. Finley, where our Supreme Court upheld the unconstitutionality of filing in the lower court, of a very similar statute that imposed a very similar filing fee surcharge in order to fund domestic filing of children. Our Supreme Court in Crocker found that court filing fees and taxes may be imposed only for purposes related to the operation and maintenance of the courts. And our Supreme Court found that, in Crocker, a domestic violence shelter was too far removed from the operation and maintenance of the courts in order to pass the rational basis test. And thus, the surcharge in Crocker v. Finley, which is very similar to the filing fee here, was held to be unconstitutional. Similar, our Supreme Court in 1906 in Cook County v. Farrock Bank noted that a filing fee is limited to being, quote, a reasonable compensation for services actually rendered, quote, unquote. That case was in turn cited by Crocker v. Finley and was part of the underlying authority our Supreme Court relied on. In this case, our legislature, the Illinois legislature, and ultimately two county boards with two counties at issue, passed the Neutral Site and Custody Exchange Act and the various county ordinances to enact. The state act allows up to an $8 charge. The county boards, in this case, I believe, limited it to charge $5 per person. But, in both cases, in all cases, what they're doing is not supporting the operation or maintenance of the courts. The record in this case is quite clear. No law libraries are being established. No employees in the court system are being paid by this fee. The courthouse isn't being renovated. Basically, nothing that has ever been upheld as a legitimate case filing fee is being funded by this Neutral Site-Custody Exchange Act. Now, this isn't to say that it's not a good idea to have such a place. The plaintiffs in this case challenged the funding mechanism. Just like in Crocker v. Finley, Crocker challenged the funding mechanism. It's the plaintiff's contention that if the General Assembly or the county boards of their respective counties are going to have such a place as a Neutral Site-Custody Visitation Center, this should be funded not by a filing fee imposed on all litigants, whether they can use it or not, but from general revenue as set forth in Crocker v. Finley. In this case, Judge Guido will take care of counting. While he denied the motions to dismiss that were filed by the defendants, Sua Sponte entered a summary judgment finding that the statute was constitutional and found that the charge was akin to a probation fee imposed on a person's convicted crimes. The problem with that probation fee, as explained further in the briefs, is only imposed on persons who are actually convicted. We don't have a problem with a Neutral Site-Custody Exchange fee being imposed on persons that are actually ordered to use the Custom Exchange Center. That's not the case. In this case, the plaintiffs didn't use the Neutral Site-Custody Exchange Center. And apparently there's no way they could have, even if they so desired to. It's not even like the law library where they didn't have to use the law library, but it was there if they wanted to. Here, there's no way that the plaintiffs could ever use it. And that's true for probably more than 99% of the civil litigants who file cases. Most people with civil litigation don't have child custody disputes. And even most people who have child custody disputes in the court system don't use this system. This system is, frankly, outside of the court system. It's not even administered by the court system. The record in this case indicates that the filing fees are paid in a lump sum to a not-for-profit organization called the Children First Foundation that doesn't have any court employees and actually requires special permission to even use. Now, who says that these fees should be given to this group? Is that in all counties? Most counties do not have a Neutral Site-Custody Exchange Center and don't charge this fee. I'm only personally aware of five or six counties in the entire state that charge this fee. As far as southern Illinois goes, I think Madison and St. Clair County are the only two that do charge it. The rest are up by Chicago. Cook? I don't think Cook did. I think Cook was one of them that did not charge it, but several of the taller counties do. I mean, Macoupin County, I think that's the fourth district, but Bond County or Clinton County, they don't charge it. As near as I can tell, Jefferson County doesn't charge it. As far as southern Illinois goes, it's unique to Madison and St. Clair County. So it's in all civil cases? In all civil cases, whether it's an auto wreck or a family law case. An eviction case. And that's really the crux of it. We don't dispute that a fee could be charged on persons that were actually required to use this system. The problem we have is it's a public welfare program that's taxing all civil litigants whether they could use it or not. I mean, a filing fee, the fact that it is a salutary effect is of no consequence. There's lots of good ideas that could be funded this way. The argument that it reduces litigation I think is a misnomer, which I think is the argument the defendants are going to make. A filing fee tax surcharge could fund, for instance, a driver's education course. I'm certain that would reduce the number of auto wreck cases on file. It also has nothing to do with the proper maintenance and operation of the court. A firearm safety course. I'm certain that a tax on a filing fee for that would reduce in some measure or the way the number of cases on file. But again, that has nothing to do with the operation and maintenance of the court. It's just too far removed. The second part of my argument is the mechanism by which this case was dismissed. The record in this case will show that there was never a summary judgment motion actually filed. What was filed was two motions to dismiss by the defendants, both of which were denied following briefing and argument. However, in the same order, or series of orders, that the circuit court denied the motions to dismiss, which were briefed and argued, it sua sponte entered a summary judgment. The court can't sua sponte issue a summary judgment. By definition, notice of an opportunity to be heard on a summary judgment must be given. I believe that's the Peterson case that cited in my brief for that effect. So procedurally, we shouldn't even be at this stage because a summary judgment motion was never actually filed. The circuit court just thought of its reasons to enter a summary judgment and then entered a summary judgment. The final big argument, I think, for purposes of today is that the Madison County defendants are challenging the venue against their compliance. The law of this case makes clear that when you're suing governmental entities and only governmental entities, that there's an exception to the general rule that a governmental entity or employee has to be sued in their county of residence. Under the Wallace case, which has been in effect for some time and which our Supreme Court has had ample opportunity to overrule, if they so desire, and that the General Assembly has had ample opportunity to change, if they so desire, we can join in all governmental defendants into one action for a related action. I recognize Justice Sponger recently wrote a decision that transferred or referred or ordered the transfer of a hospital out of a case to, I believe it was Jersey County, but it was a different county. That case is distinguishable from this case because in that case there were both private litigants and governmental litigants. In this case, it's all governmental litigants on the defense side. So I would contend that that makes Justice Sponger's recent decision distinguishable from venue in this case. But at the end of the day, truth be told, it probably doesn't matter whether the venue in this case is split off between Madison and St. Clair County. It was filed for convenience as one. If the plaintiffs have to proceed with two separate identifications, burning up twice as much circuit court resources as filing one action, we're certainly willing to proceed with two circuit courts instead of one. Unless there's any questions. Thank you, Counsel. Thank you. Yes. May it please the Court, Counsel. My name is Alvin Paulson. I represent the St. Clair County defendants. First of all, I'd like to address the fact that the circuit court told us all in open court if we would like to file briefs or summary judgment motions that he didn't think was necessary because it's a question of law whether or not this is constitutional or not. And nobody disputes the facts. So the judge ended a judgment, in my opinion, on the pleadings, not as a summary judgment. He based it on the pleadings themselves and found as a matter of law that this statute and the underlying ordinances of Madison and St. Clair County are constitutional. Mr. Mann has misinterpreted and misapplied the Crocker case. If you look at Mellon v. Polfeldt, it's 313.619. That dealt with an arbitration fee. There was a class action file saying, well, compromise the arbitration fee when in my case I'm asking for $2 million. It's not eligible for arbitration. The court there clearly found, using the property test, that it was a constitutional fee and it was not under the free access clause denying access to the courts. When we look at this statute, we have to look at, one, the plain meaning of the statute. The statute clearly states that the General Assembly finds that domestic area relations law between individuals estimated legal problems. These problems often result in emotional damage to children and create extra burdens for the courts. These are compelling reasons for providing mutual sites for parents. Now, in St. Clair County, this money, I believe, goes to the Children's First Program, which has been highly successful. It has cut down on divorce-type litigation after a judgment of dissolution. It's for a court purpose. Now, there's two tests you have to look at. First, the reasonable relationship to the public interest. It's clearly right on the face of the statute that courts can't substitute their judgment for what the statute says. The statute on its face, it meets the rational relationship to the public interest. So, we have to look at the free access clause, though. And that is, does this statute relate to the operation or maintenance of the court system? That is the key words when you look at free access. If it relates to the operation or maintenance of the court system, it's constitutional and does not deny free access to the courts. When you look at the statute on its face, it says that it's helping with the maintenance of the courts and preventing backlogs, preventing all these disputes. In Crocker, that fee was only charged to divorce or dissolution proceedings. And it went to the domestic violence shelter. Clearly, this is not the same thing. The court found that that was a social welfare program, and it was, in fact. Domestic violence doesn't, isn't confined just to dissolution of marriages. It's a society-wide issue. In this case, this statute says it's related to the maintenance of the courts. And, in fact, it is. In fact, in the statute, Judge, Chief Judge John Barrett said it would be the one to determine how this money is spent and where it should go in his judgment. And if he decides that it's not needed, then he can prevent the fee or prevent it from being instituted. It specifically states, provided that the expenditure is approved by the Chief Judge of the judicial circuit in which the county is located. So, in the court's own estimation, this money is going to help administer the courts and is helping the court system, preventing a backlog of cases, preventing disputes regarding dissolution of custody issues. This is not a different case. The bottom line is it passes constitutional muster. And all the parties knew, the court was deciding this matter as a matter of law. In fact, we all said that it would be a waste of time to come back to the court. The court made a finding, and I think the finding the court made in this case was not only appropriate, it was exactly proper based upon the constitutional test that you must apply to the facts and to the statute itself. Courts cannot substitute their judgment for the legislature. And the legislature made it clear that this was to aid in the maintenance and operation of the courts, and therefore does not deny free access to the courts. Thank you. May it please the court. Counsel. My name is Anthony L. Mark, and I represent the Madison County defendants in this case. We, our firm, several lawyers in my firm, Phil Leidy, Larry Smith, and I, have been specially appointed as assistant state's attorneys for purposes of handling cases such as this. The two primary points that I want to raise are, first of all, reinforce what Mr. Paulson stated, that first of all, the statute is constitutional, and the methodology used by Judge Guido in determining that the statute was constitutional was proper. And second of all, the second point I was going to raise, that if this court disagrees and feels a need to reverse and remand, then there should be a severance, and the Madison County defendant should be sent to Madison County because of the clear language of the venue statute. It sounds like plaintiffs are pretty much conceding that the court can do that if it reaches that issue. So I'm not going to spend a lot of time on that. I would prefer to devote the remaining minutes that I have to talking about the procedural context of this case and why Judge Guido was correct in finding that the statute was constitutional. In this case, there's no question but that the complaint filed by the plaintiffs, Kosiak and Smith, Smith-Silk, excuse me, challenged the constitutionality of this act. Nor is there any question but we filed humane motions attacking various things about this complaint. Venue severance were raised first because we didn't want to waive that issue. Then we went to the Harvard constitutionality issue. We raised and put into the court record at the earliest moment possible the Madison County ordinances which were backed by multiple, I believe seven in total, legislative findings by the Madison County Board supporting that ordinance. And as Mr. Paulson has already pointed out to you, there was already in the record the statute itself. The plaintiffs cited that. Of course, Judge Guido had the right to take judicial notice of the complete statute because they cited it. And that includes legislative findings in Section 5 similar to what Mr. Paulson raised. So in our first response, we say, Judge, it's constitutional. They reply, they ignore that. They don't even address that issue at all. And then we responded once again before oral argument, before any motion was argued before Judge Guido. We replied and we pointed out they ignored our argument regarding the constitutionality of the statute. Then we go and argue. Judge Guido asks questions of all people, of all persons, all counsel appearing. He gives everyone an opportunity to say anything and everything they want to say at that hearing. We all do. I was disappointed when he ruled against me on the motion to sever and send to Madison County. But that was his ruling. He took the rest of it under advisement. On July 6th of 2012, I believe was the date, he enters his order. It's a two-page order. It's in the record. And in that two-page order, he rules on St. Clair County's motion to dismiss. He finds, consistent with the legislative findings, he finds that there are rational grounds and a rational basis for upholding the constitutionality of the statute. And he further finds that the constitutionality should be upheld. And his findings show that there was a purpose related to the operation of the courts because he said this legislation is intended to enforce and carry out four orders. Those were his findings, consistent with the findings of both the General Assembly and the Madison County ordinances. Now, in that order, in that two-page order, he did not rule on my motion to dismiss. Remember, I said this statute is constitutional. And I filed a 2619 motion and supplemented the record with documents showing why it's constitutional and argued why Crocker v. Finley is distinguishable. He doesn't rule on that. Plaintiffs filed a motion to reconsider and for clarification. So we go back again, and we respond. Madison County defendants respond to that, once again, arguing for constitutionality. Judge Guido asks his questions. Everyone's given an opportunity to say everything they want to, either in favor of constitutionality or against it. An order is then drawn up. Now, it's at this stage, in October, two months, excuse me, three months after he's found the statute constitutional that he denies the Madison County defendants' motion to dismiss. He's perfectly within his rights under the case that we cited in our brief, Mount Prospect State Bank v. Village of Kirkwood, to rule on constitutional issues as a matter of law as part of a motion to dismiss, which has been pending all of this time when he finds that the statute is constitutional. And it's thereafter that we've gone to this Court when plaintiffs filed their motion, excuse me, filed their notice of appeal, saying that it's unconstitutional. Now, I've made several references to the findings, the legislative findings. I don't think I need to take a lot of time talking to you about the legislative findings found in Section 5 of the Act. The state legislature clearly made findings connecting this with the type of problems that exist between parents in these custodial exchanges, which are done under a court order, of course. That's why it's done, because the court ordered these people to engage in that conduct, to make those exchanges. The court found that violence occurs as a result of this, and other legal problems are created as a result of this. The court found that the implementation of this statute, excuse me, the legislature found that this statute needs to be implemented, and this funding mechanism needs to be implemented in order to better carry out the functions of the courts. Madison County Ordinance adds similar findings. Now, I agree wholeheartedly with Mr. Paulson in his statement that property versus spending has been misrepresented by counsel for plaintiffs in an effort to convince the court that that's not constitutional. We're not talking about a general welfare fund when parents are ordered by the courts to exchange custody as a result of a court order. There's a direct connection between that court order telling them to exchange these children, as well as there's the involvement by the chief judge of the circuit who reviews the usage of those funds. I believe that's Section 20 of the Act, which Mr. Paulson was reading from earlier. So we are miles apart from the property versus spending situation. General Assembly enacts legislation, says its county boards can either adopt this or not. Madison County chose to do so. This is not some huge problem. This is not some state welfare program being funded by only domestic filers of dissolution of marriage actions as in the Crocker versus Finley case. Furthermore, it should be pointed out that the plaintiffs have a tremendous burden in this case. As we cited in our brief to both the People versus Botrup case and also the People versus Dinelli case, Illinois statutes enjoy a strong presumption of constitutionality. That's People versus Botrup. People versus Dinelli. When reasonably possible, courts are to construe a statute in order to affirm its constitutionality. That's exactly what Judge Quito did. He looked at the statute. He looked at what the allegations were. And he found that this funding mechanism, which they are attacking, is indeed constitutional because it complies with the requirements set forth in Crocker versus Finley, that under the free access clause, you have to make sure that there's some connection between the statute and the operation of the courts. And clearly, there is that connection in this case, as I've demonstrated and was demonstrated by the legislative findings by the General Assembly and also by the legislative findings by the Madison County Court. So all of these reasons are grounds why this court should affirm Judge Quito and his rulings in favor of the constitutionality of the statute. Plaintiffs have argued that they disagree. And it's clear that they disagree with the statute. They disagree with the ordinance. They disagree with the funding mechanism. Well, if you have a disagreement regarding ordinances or legislation that is enacted, you have a right to petition your government. And that's what you're supposed to do. If you have a disagreement, you tell these people, the legislators who enacted the legislation, we have a problem with this, please change it. You don't ask a circuit court judge to be a super legislator. You don't ask three appellate court justices to be a super legislator. And you don't ask the Supreme Court of Illinois to be a super legislator. And that's why those presumptions are there in favor of the constitutionality of an act. Because the legislature is supposed to decide these issues on the front end. And they have not even come close to meeting their tremendous burden of demonstrating to this court that the statute or the ordinances passed in accordance with the statute are unconstitutional. I've been looking around all the time to try to find out how much time I have left. I guess I must have plenty of time because nobody is saying that I don't. Judge Quito found that the act in this case was proper, constitutional, under a rational basis test. And there has been no showing to the contrary by counsel for the plaintiffs. If this court for some reason disagrees, and I don't expect in any way you will, but if you do, you're going to obviously remand it to the circuit court. And if you remand it to the circuit court consistent with point two of our brief, we would respectfully request that you order a severance so that Madison County would be defending itself in Madison County, consistent with section 2-103, which, as was alluded to earlier, in the Shaw v. St. John's Hospital case, which was decided last year as I recall, this court was very firm in holding that the mandatory language of that statute must be applied. This is not a lawless, and lawless is the name of the case, L-I-W-L-E-S-S. This is not a lawless situation at all. The lawless situation was up in the first district of the state, up in both Cook County and I believe neighboring Will County. I may have my counties wrong. But there were two municipal corporations in one county, Forest Preserve in South Forest Park. Anyway, another municipality in Will County and one municipal corporation in Cook County. Two of the agents of one of the defendants in Will County, one of them was in Will County and the other one was in Cook County. That's where his residence was. The types of causes, it was not a constitutional attack. It was tort-based relief that was being sought. So the court could have either required a splitting of causes of action, which is never good, or they had to come up with a mechanism for satisfying this situation, and that's why lawless came about. It's never been followed. It's always been distinguished by every court that's ever adopted it. Now, this case is totally different. On day one, Smith-Silk files her litigation against someone up in Madison County. On day two, Kosiak files, by same counsel, a separate action in St. Clair County against other defendants. And so that's their predicate, to file them together in St. Clair County on day three. And that's exactly what happened. Day one. So my request is, once again, you uphold the constitutionality of the act, second of all, if for some reason you do not remand it, order severance, and transfer venue to Madison. Thank you. Counsel. Counsel. Addressing a few of the points. The Mellon case, I think is, which is the arbitration fee case cited by counsel, I think is substantially distinguishable from all the other cases. The arbitration fee actually paid employees in the court system and actually funded directly the process of litigation through the court system. In this case, there's not a single employee, at least not in the record amount that I'm aware of, that is paid either in Madison County or St. Clair County by this neutral site fee. The only connection the county has with it is that the clerk charges and collects the fee and then transmits it to a third-party not-for-profit entity that's not a court employee and is outside of the court system. Lots of things have an effect on litigation or on the court's doctrine. A rainy day might cause more automax than a bribery, but certainly we couldn't argue that a rainy day is substantially related to the operations of the court. As far as the findings made by the General Assembly and, as appropriate, the requisite county boards, I would note that most, if not all, of those exact same findings were found or made by the Illinois General Assembly in the Crocker-Finley case. You lay Crocker v. Finley, the case down next to the statute at issue in this case, and aside from the fact that more people are charged a fee here than in Crocker, and you change the name from Domestic Violence Shelter to Neutral Site Exchange Act, it's a cut-and-paste job. It is essentially the identical statute. And I would encourage this court to read Crocker v. Finley, which I'm certain you're going to do, and compare it to the statute in this case. The conclusion, in my opinion, is inescapable. It's identical. As far as this fee being used to enforce and carry out a court order, well, by the same token, then, to put a surcharge on civil filing fees to hire police officers. Do police officers enforce court orders as well? Should the police departments be funded by civil litigants? Certainly, for instance, in the function of an order of protection, there's an order that requires Person A to stay away from Person B, which is enforced by police officers. But I think that would be a stretch to say that the sheriff's department or the city police should be funded by civil litigants, for the same reason it's a stretch here. As far as the Mount Prospect case and its related case cited by counsel, that case is distinguishable from what the court, Judge Quito, did here, because in Mount Prospect and the other case, the circuit court granted the motion that was on file and simply expounded on the reasons. Here, the motions that were filed by the defendants were actually denied. So Mount Prospect is simply not related. And finally, I want to address the presumption of constitutionality. Yes, I agree, our law presumes that an enactment of the legislature is constitutional. But the fact that it's presumed constitutional doesn't mean that it is. Our history is replete with statutes that most of us will probably find repugnant. Brown v. Board of Education, cited by our Supreme Court, the underlying statutes at issue in that case were presumed, for purposes of the court, as constitutional. But I don't think anybody here today would argue that the fact that they were presumed constitutional in the enactment here today, that this court should affirm them. Those statutes were unconstitutional, and this statute is unconstitutional. And it's this court's duty to strike down unconstitutional statutes when the appropriate case is before it. Thank you. Thank you, counsel. Thank you, fellas. Thank you. We've got five minutes.